**FILED**
**Dec 13, 2022**
**02:14 PM(ET)**
**TENNESSEE COURT OF**
**WORKERS' COMPENSATION**
**CLAIMS**



### TENNESSEE BUREAU OF WORKERS' COMPENSATION
### COURT OF WORKERS' COMPENSATION CLAIMS
### AT CHATTANOOGA

| | | |
|---|---|---|
| Natacha Hudgins, | ) | Docket No.: 2017-01-0690 |
| Employee, | ) | |
| v. | ) | |
| Global Personnel Solutions, Inc., | ) | State File No.: 92112-2016 |
| Employer, | ) | |
| And | ) | |
| American Zurich Insurance Co., | ) | Judge Thomas Wyatt |
| Carrier. | ) | |

## COMPENSATION ORDER

In a Compensation Hearing on December 2, 2022, Natacha Hudgins sought permanent disability benefits for right-knee and spinal injuries and referrals made by the treating physician. Global stipulated to the compensability of the knee injury, disputed the spinal condition, and asked for a credit for overpayment of temporary disability benefits.

For the reasons below, the Court holds that Ms. Hudgins's spinal injury is compensable; thus, she is entitled to an original award of permanent partial disability benefits for both her knee and spinal conditions. The Court also orders Global to authorize the referrals made by the treating physician. Finally, the Court holds that Ms. Hudgins attained maximum medical improvement on January 6, 2022, and that Global shall receive a credit for temporary disability benefits paid after that date.

### History of Claim

Ms. Hudgins is sixty-nine years old and has a high school diploma. She packed batteries for fifteen years while working for Global without limitations of the extensive standing and walking that her job required.

On November 23, 2016, Ms. Hudgens tripped on a pallet at work. She fell forward and landed on her right hand and knee. Global accepted the claim and authorized

1

orthopedist Dr. Carl Dyer for treatment.[1]

Dr. Dyer testified that, when he first saw Ms. Hudgins, her primary problem was right-knee pain. He referred her to Dr. Martin Redish, who performed a partial knee replacement in October 2017 and recommended post-surgery physical therapy. During the therapy, Ms. Hudgins developed a gait disorder. Dr. Dyer related this to a flexion contracture, which prevented her from fully bending and straightening her right knee. He wrote that she "walks by putting her [left] foot forward in a normal fashion and her right foot drags behind with each step."

The gait disorder continued despite extensive physical therapy to correct it. In March 2018, providers began noting Ms. Hudgins's reports of back pain and radicular symptoms into her right leg.[2] Dr. Dyer referred her to Dr. Adam Caputo, but Global denied the referral on causation grounds. Ms. Hudgins sought spinal treatment in an Expedited Hearing, after which the Court ordered Global to authorize treatment by Dr. Caputo. He performed spinal fusion surgery in July 2020.

Still, Ms. Hudgins's gait disorder persisted. In October 2020, Dr. Dyer ordered more physical therapy "for gait training." Finally, he referred her to Dr. Jason Rogers for consideration of a total knee replacement. Dr. Rogers performed the surgery in July 2021. Ms. Hudgins's gait disorder continued after the total knee replacement.

In September and October 2022, Dr. Dyer referred Ms. Hudgins back to Dr. Caputo for further treatment of her ongoing spinal condition. He also referred her to a neurologist to determine whether she has a "true motion disorder."[3] Global did not honor the referrals because it denied the causation of Ms. Hudgins's spinal condition.

The major issue litigated during the Compensation Hearing was whether Ms. Hudgins's spinal condition arose primarily out of and in the course and scope of employment. Global argued that the preponderance of the evidence failed to prove the causation of her spinal condition because the deposition testimony of Drs. Dyer and Caputo falls short of the requisite standard of proof.

During the Expedited Hearing, Ms. Hudgins submitted a causation letter in which Dr. Dyer stated without explanation that her spinal condition was work-related. Later, Global sent him a letter seeking his opinion whether Ms. Hudgins's spinal condition arose primarily from her gait disorder. Dr. Dyer responded, "Possibly—the [patient] also has Deg. Disc Disease." Dr. Caputo initially declined to give a causation opinion, writing in response to a letter, "Since I did not assume care until almost 3 years after the injury, I

---

[1] The parties agreed that Dr. Dyer was selected from a panel.
[2] The back aspect of this case will be discussed later in this order.
[3] Dr. Dyer did not identify whether the motion disorder concerned Ms. Hudgins's knee, her spine, or both.

cannot determine whether the [work] injury resulted in the spinal condition I treated in 2019."

At the Compensation Hearing, the parties introduced Drs. Dyer's and Caputo's deposition testimony explaining their responses to the causation letters. Dr. Dyer testified that he first treated Ms. Hudgins's knee because it was her most physically limiting problem. He added, "It's pretty hard to separate some of the back problems with the joint symptoms because there was a considerable overlap." In retrospect, he testified that, "we would have to say that all this was directly related to the [work] injury as it evolved over a period of time."[4]

Dr. Dyer also clarified his opinion on the causal connection between Ms. Hudgins's gait disorder and her spine condition. He answered "yes" to a question whether the conditions in her spine were "an aggravation of a pre-existing condition secondary to walking with [a] flexion contracture of the right knee." On cross-examination, he testified that the causal connection was "indirectly, through altered gait, most likely." He elaborated,

> The longer you walk with an abnormal gait, the more likely you are to have back trouble. With a flexion contracture, what happens is the legs become unequal and that causes an increase in pelvic tilt . . . and there is extra pressure on one side and the movement of walking makes the pelvis move back and forth with respect to the rest of the body and that, in turn, acts like a grinding action, which would tend to aggravate an issue.

Dr. Dyer testified that he answered all questions within a reasonable degree of medical certainty.

While Dr. Caputo testified that he could not state the "definite causality" of Ms. Hudgins's spinal condition, he said he commonly sees patients who develop back conditions secondary to knee and hip injuries. After reviewing the medical records, Dr. Caputo stated, "the only explanation that I have been presented with that plausibly explains her back condition would be the knee." Considering a hypothetical question, Dr. Caputo testified it was reasonable "that Ms. Hudgins's age-related degeneration, difficulty with ambulation, and immobility might naturally progress into this low back injury that [I] treated her for." On cross-examination, Dr. Caputo reiterated that he could not be certain of the causation of Ms. Hudgins's spinal condition.

Global also raised the issue of when Ms. Hudgins attained maximum medical improvement from her injuries. Global paid temporary disability benefits at the stipulated

---

[4] In the context of his testimony, the Court interprets the term "all this" to include both Ms. Hudgins's knee and spinal conditions.

3

rate of $259.91 per week from August 23, 2017, until September 6, 2022. It argued that Ms. Hudgins attained maximum medical improvement on October 19, 2018, when Dr. Redish rated her knee impairment at twelve percent. It seeks a credit for all temporary disability benefits paid after that date. The parties stipulated to the correctness of this rating, although they did not agree that the date of maximum medical improvement fell on the date of this rating.

Ms. Hudgins contended that she did not attain maximum medical improvement until, at the earliest, January 6, 2022, when, after the total knee replacement, Dr. Rogers rated her knee at twenty-two percent. Dr. Caputo confirmed an impairment rating of seven percent based on Ms. Hudgins's spinal condition but set the date of maximum medical improvement from the spinal injury on a date before January 6, 2022. The parties stipulated that Dr. Redish's knee rating and Dr. Caputo's spine rating combine to total eighteen percent to the body under the Combined Values Chart in the Sixth Edition of the *AMA Guidelines to the Evaluation of Impairment.*

Ms. Hudgins testified that she experienced only a little functional improvement after recovering from her surgeries. She did not return to work because she was never released to full duty. She currently uses a walker because her right knee sometimes buckles, throwing her off balance.

## Findings of Fact and Conclusions of Law

Ms. Hudgins must prove all aspects of her claim by a preponderance of the evidence. Regarding causation, an injury arises primarily out of and in the course and scope of employment only if it has been shown by medical expert testimony based on a reasonable degree of medical certainty. Thus, Ms. Hudgins must show that her employment at Global contributed more than fifty percent in causing her spinal injury or aggravating a pre-existing condition in her spine, considering all causes. The causation opinion of Dr. Dyer, who was selected from a panel, receives a presumption of correctness rebuttable by a preponderance of the evidence. Tenn. Code Ann. § 50-6-102(14)(A)-(E) (2016).

*Causation*

In deciding whether Ms. Hudgins proved the causation of her spinal condition, the Court considers the expert medical testimony along with relevant lay testimony and other facts admitted into evidence. Within that context, the Court holds that Ms. Hudgins proved the work-relatedness of her spinal condition by a preponderance of the evidence. Dr. Dyer, whose causation opinion is presumed correct, testified that, although he focused treatment at first on Ms. Hudgins's more problematic right-knee injury, her spinal condition "was directly related to the [work] injury as it evolved over a period of time." In addition, he testified that the gait alteration arising from Ms. Hudgins's compensable knee injury caused her pelvis to grind on her lumbar spine, aggravating the pre-existing degenerative condition

4

of the spine.[5] Dr. Dyer's opinion is strengthened by the facts that Ms. Hudgins had no back problems during the fifteen years she worked for Global before the date of injury; she suffered a serious fall that badly injured her right knee at work; and she first noticed back and radicular pain while performing physical therapy for her knee injury.

Global's attempt to weaken Dr. Dyer's causation opinions falls short. While he may have been inartful at times in conveying his opinions, he testified that he gave them within a reasonable degree of medical certainty. Taken as a whole and in the context of the parties' stipulations and the credible lay testimony presented during the hearing, the Court holds Dr. Dyer's opinion, presumed by law to be rebuttably correct, proves that Ms. Hudgins's spinal condition arose primarily out of and in the course and scope of employment.

Dr. Caputo's testimony bolsters, rather than rebuts, Dr. Dyer's causation opinions. Although he could not state with "certainty" the causation of Ms. Hudgins's back injury, he stated the only plausible explanation was the knee injury. Global's attempt to dilute Dr. Caputo's testimony because he would not definitively state what caused Ms. Hudgins's spinal condition ignores longstanding Tennessee law that "[a]bsolute certainty in the medical evidence is not required." *Clark v. Charms, L.L.C.*, No. W2017-02552-SC-R3-WC, 2019 Tenn. LEXIS 149, at *11 (Tenn. Workers' Comp. Panel Mar. 19, 2019).

In view of the above, the Court holds that Ms. Hudgins proved by a preponderance of the evidence that her spinal conditions arose primarily out of and in the course and scope of employment.

*Original Award*

Tennessee Code Annotated section 50-6-207(3)(A) allows for an original award of permanent partial disability benefits for an employee who sustains a permanent work injury. The award is calculated by multiplying the applicable permanent impairment rating by 450 weeks, and then multiplying that number of weeks by the employee's compensation rate. The employee receives this award whether she returns to work or not.

Here, the parties stipulated that the combined impairment rating for Ms. Hudgins's knee and spinal condition is eighteen percent to the body. After applying the statutory formula, the Court holds that Ms. Hudgins is entitled to an original award of permanent partial disability benefits totaling $21,052.71.

---

[5] The Appeals Board held here that a condition arising as the direct and natural consequence of a compensable injury is, itself, compensable. *Hudgins v. Global Personnel Solutions, Inc.*, 2020 TN Wrk. Comp. App. Bd. LEXIS 19, at *6 (Apr. 17, 2020.)

5

*Maximum Medical Improvement and Temporary Disability*

In *Sanders v. Lodgenet Interactive Group,* No. M2011-00725-WC-R3-WC, 2012 Tenn. LEXIS 64, at *14 (Tenn. Workers' Comp. Panel Feb. 10, 2014), a Supreme Court panel held the date of maximum medical improvement occurs when it appears that an employee's injury has improved as far as is possible. In reviewing the evidence here, the Court holds Ms. Hudgins attained maximum medical improvement on January 6, 2022, when she received an impairment rating after total knee replacement surgery.

Global's argument that the Court should set the date of maximum medical improvement in October 2018, when Dr. Redish rated her impairment after the first knee surgery, is unpersuasive. Although Ms. Hudgins felt she gained but little functional improvement from her surgeries and physical therapy, her physicians ordered, and she underwent, the surgeries and therapy to improve the gait disorder she developed from her compensable knee injury. While the gain may have been small, the doctors intended the surgeries and therapy they prescribed to benefit her functionally. Further, Ms. Hudgins gave much effort to achieve the gains she did receive. Thus, the Court holds that Ms. Hudgins's work injuries did not improve as far as is possible until she received an impairment rating after her total knee replacement.

Global is entitled to a credit for temporary total disability benefits paid after January 6, 2022. Tenn. Code Ann. § 50-6-207(1)(E). Here, Global paid temporary disability benefits through September 6, 2022, or for 243 days after the date of maximum medical improvement. Therefore, Global's overpayment totals $9,022.59 (243 days times a daily compensation rate of $37.13.) This reduces the original award to $12,030.12.[6]

*Medical Benefits*

The conclusion that Ms. Hudgins's spinal condition is compensable means that Global must provide reasonable and necessary treatment for that condition. This includes Dr. Dyer's referrals to Dr. Caputo. It appears that the referral to a neurologist for treatment of a "motion disorder" may have related to treatment of Ms. Hudgins's compensable knee injury. But even if not, Global must honor the referral made by the treating physician.

*Penalty Referral*

The Expedited Hearing Order required Global to pay reasonable and necessary medical benefits for treatment of Ms. Hudgins's right knee *and spine*. This order was in place when Dr. Dyer referred Ms. Hudgins to Dr. Caputo and a neurologist. While Global may have disputed its liability for Ms. Hudgins's spinal condition, that dispute did not

---

[6] By statute, the Court cannot consider Ms. Hudgins's entitlement to a resulting award until July 27, 2023, which is eighty-one and one-half weeks after the date of maximum medical improvement.

6

entitle it to violate the Expedited Hearing Order. Thus, the Court refers this case to the Bureau's Compliance Program for consideration of the imposition of a penalty. Tenn. Code Ann. § 50-6-118(a)(6).

**IT IS, THEREFORE, ORDERED:**

1. Global shall pay Ms. Hudgins an original award of permanent disability benefits totaling $12,030.12.

2. Global shall provide ongoing future medical benefits under Tennessee Code Annotated Section 50-6-204 for life under the care of Drs. Carl Dyer and Adam Caputo, including promptly authorizing and scheduling Dr. Dyer's referrals to Dr. Caputo and a neurologist.

3. The Court refers Global to the Bureau's Compliance Program for consideration of a penalty for its failure to honor Dr. Dyer's referrals to Dr. Caputo and a neurologist, and its failure to comply with a Court order.

4. The Court awards Attorney Matthew Coleman an attorney's fee not to exceed twenty percent of the original award of permanent disability benefits. Mr. Coleman shall promptly petition the Court for any trial preparation expenses and additional attorney's fees he seeks.

5. Global and/or its carrier shall pay the $150.00 filing fee to the Court Clerk within five business days. It shall file the SD2 within ten business days of this order becoming final. Unless appealed, the order shall become final thirty days after issuance.

**ENTERED December 13, 2022.**

*Thomas Wyatt*

**Judge Thomas Wyatt**
**Court of Workers' Compensation Claims**

**APPENDIX:**

Technical record:

1. Petition for Benefit Determination filed October 2, 2017
2. Petition for Benefit Determination filed July 24, 2019
3. Original Dispute Certification Notice

4. Post-Discovery Dispute Certification Notice
5. Scheduling Order
6. Motion to Adjust Scheduling Order
7. Employer's Response to Motion to Adjust Scheduling Order
8. Order Continuing Compensation Hearing
9. Discovery Order
10. Joint Pre-Compensation Hearing Order
11. Employee's Exhibit List
12. Employer's Pre-Hearing Brief
13. Employer's Trial Witness and Exhibit List
14. Employee's Pre-Hearing Brief and Motion to Compel Treatment
15. Expedited Hearing Order
16. Appeals Board Opinion
17. Addendum to the Joint Pre-Hearing Statement
18. Employee's Motion for Sanctions and Penalties
19. Employer's Response to Motion for Sanctions and Penalties
20. Order on Motion for Sanctions
21. Employer's Response to Order for Sanctions
22. Affidavits in Support of Employer's Response
23. Employee's Reply to Employer's Response to Order for Sanctions
24. Order of Referral to Compliance Program

Exhibits:
1. Medical records compilation
   - Dr. Carl Dyer
   - Prime Imaging
   - Dr. Adam Caputo
   - Dr. Stephen Dreskin
   - Dr. Dale Ingram
   - Dr. Jason Rogers
   - Dr. Martin Redish
   - Functional Capacity Examination
   - Dr. Paul Grayson Smith
2. Transcript of deposition of Dr. Adam Caputo
3. Transcript of deposition of Dr. Carl Dyer
4. Medical questionnaire—Dr. Adam Caputo
5. August 10 and September 14, 2022, office notes of Dr. Carl Dyer
6. Final Medical Reports of Drs. Martin Redish and Jason Rogers
7. Medical questionnaires—Dr. Carl Dyer
1. The right-knee injury Ms. Hudgins received on November 23, 2016, arose primarily out of and in the course and scope of employment.
2. Ms. Hudgins gave notice of her injury on November 26, 2016.

# CERTIFICATE OF SERVICE

I certify that a copy of the Order was sent as indicated on December 13, 2022.

| Name | U.S. Mail | Email | Service sent to: |
|------|-----------|-------|------------------|
| Matthew Coleman Employee's Attorney | | X | mcoleman@loganthompsonlaw.com lhaywood@loganthompsonlaw.com |
| Tiffany Sherrill Employer's Attorney | | X | tbsherrill@mijs.com clalmeida@mijs.com |
| Compliance Program | | X | WCCompliance.Program@Tn.gov |

Penny Shrum, Court Clerk
**WC.CourtClerk@tn.gov**

9

For notices of appeal filed on or after July 1, 2022.



## Compensation Order Right to Appeal:

If you disagree with this Compensation Order, you may appeal to the Workers' Compensation Appeals Board. To do so, you must:

1. Complete the enclosed form entitled "Notice of Appeal" and file it with the Clerk of the Court of Workers' Compensation Claims *within thirty calendar days* of the date the Compensation Order was filed. When filing the Notice of Appeal, you must serve a copy upon the opposing party (or attorney, if represented).

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing the Notice of Appeal. Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service. In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the filing fee. You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal. **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of your appeal.**

3. You are responsible for ensuring a complete record is presented on appeal. The Court Clerk will prepare the technical record and exhibits for submission to the Appeals Board, and you will receive notice once it has been submitted. If no court reporter was present at the hearing, you may request from the Court Clerk the audio recording of the hearing for a $25.00 fee. A licensed court reporter must prepare a transcript, and you must file it with the Court Clerk *within fifteen calendar days* of filing the Notice of Appeal. Alternatively, you may file a statement of the evidence prepared jointly by both parties *within fifteen calendar days* of filing the Notice of Appeal. The statement of the evidence must convey a complete and accurate account of the testimony presented at the hearing. The Workers' Compensation Judge must approve the statement of the evidence before the record is submitted to the Appeals Board. If the Appeals Board must review testimony or other proof concerning factual matters, the absence of a transcript or statement of the evidence can be a significant obstacle to meaningful appellate review.

4. After the Workers' Compensation Judge approves the record and the Court Clerk transmits it to the Appeals Board, a docketing notice will be sent to the parties. You have *fifteen calendar days* after the date of that notice to file a brief to the Appeals Board. *See the Rules governing the Workers' Compensation Appeals Board on the Bureau's website*

***For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.***

If neither party timely files an appeal with the Appeals Board, the trial court's Order will become final by operation of law thirty calendar days after entry. Tenn. Code Ann. § 50-6-239(c)(7).



## NOTICE OF APPEAL

Tennessee Bureau of Workers' Compensation
www.tn.gov/workforce/injuries-at-work/
wc.courtclerk@tn.gov | 1-800-332-2667

Docket No.: _____

State File No.: _____

Date of Injury: _____

_____

**Employee**

v.

_____

**Employer**

Notice is given that _____

*[List name(s) of all appealing party(ies).  Use separate sheet if necessary.]*

appeals the following order(s) of the Tennessee Court of Workers' Compensation Claims to the Workers' Compensation Appeals Board (check one or more applicable boxes and include the date file-stamped on the first page of the order(s) being appealed):

☐ Expedited Hearing Order filed on _____    ☐ Motion Order filed on _____

☐ Compensation Order filed on _____    ☐ Other Order filed on _____

issued by Judge _____.

## Statement of the Issues on Appeal

Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____

_____

_____

_____

## Parties

**Appellant(s) (Requesting Party):** _____ ☐ Employer ☐ Employee

Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ Docket No.: _____ Date of Inj.: _____

**Appellee(s)** (Opposing Party): _____ ☐ Employer ☐ Employee
Appellee's Address: _____ Phone: _____
Email: _____
Attorney's Name: _____ BPR#: _____
Attorney's Email: _____ Phone: _____
Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellee \**

## CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Notice of Appeal by First Class mail, postage prepaid, or in any manner as described in Tennessee Compilation Rules & Regulations, Chapter 0800-02-21, to all parties and/or their attorneys in this case on this the _____ day of _____, 20 _____.

_____
*[Signature of appellant or attorney for appellant]*



**Tennessee Bureau of Workers' Compensation**
**220 French Landing Drive, I-B**
**Nashville, TN 37243-1002**
**800-332-2667**

### AFFIDAVIT OF INDIGENCY

I, _____, having been duly sworn according to law, make oath that because of my poverty, I am unable to bear the costs of this appeal and request that the filing fee to appeal be waived. The following facts support my poverty.

1. Full Name: _____     2. Address: _____

3. Telephone Number: _____     4. Date of Birth: _____

5. Names and Ages of All Dependents:

_____ Relationship: _____

_____ Relationship: _____

_____ Relationship: _____

_____ Relationship: _____

6. I am employed by: _____

My employer's address is: _____

My employer's phone number is: _____

7. My present monthly household income, after federal income and social security taxes are deducted, is:

$ _____

8. I receive or expect to receive money from the following sources:

| | | | |
|---|---|---|---|
| AFDC | $_____ per month | beginning | _____ |
| SSI | $_____ per month | beginning | _____ |
| Retirement | $_____ per month | beginning | _____ |
| Disability | $_____ per month | beginning | _____ |
| Unemployment | $_____ per month | beginning | _____ |
| Worker's Comp. | $_____ per month | beginning | _____ |
| Other | $_____ per month | beginning | _____ |

LB-1108 (REV 11/15)                                    RDA 11082

9. My expenses are:

Rent/House Payment $ _____ per month     Medical/Dental  $ _____ per month

Groceries        $ _____ per month       Telephone       $ _____ per month

Electricity      $ _____ per month       School Supplies $ _____ per month

Water            $ _____ per month       Clothing        $ _____ per month

Gas              $ _____ per month       Child Care      $ _____ per month

Transportation   $ _____ per month       Child Support   $ _____ per month

Car              $ _____ per month

Other            $ _____ per month (describe: _____ )

10. Assets:

Automobile              $ _____    (FMV) _____

Checking/Savings Acct.  $ _____

House                   $ _____    (FMV) _____

Other                   $ _____    Describe: _____

11. My debts are:

Amount Owed          To Whom

_____          _____

_____          _____

_____          _____

_____          _____

I hereby declare under the penalty of perjury that the foregoing answers are true, correct, and complete and that I am financially unable to pay the costs of this appeal.

_____
APPELLANT

Sworn and subscribed before me, a notary public, this

_____ day of _____, 20_____.

_____
NOTARY PUBLIC

My Commission Expires: _____

LB-1108 (REV 11/15)                                    RDA 11082